UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-30106-KPN

| | |
|---|---|
| MICHAEL J. ATKIN and ) | |
| JUDITH M. ATKIN, ) | |
| Plaintiffs ) | |
| ) | COMPLAINT |
| v. ) | (JURY TRIAL DEMANDED) |
| ) | |
| LIBERTY LIFE ASSURANCE ) | |
| COMPANY OF BOSTON, ) | |
| Defendant ) | |

## INTRODUCTION

1.  The plaintiffs, Michael J. Atkin ("Mr. Atkin") and his wife, Judith M. Atkin ("Mrs. Atkin"), bring this action against the defendant, Liberty Assurance Company of Boston ("Liberty"), for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001, et. seq. ("ERISA"). Mr. Atkin is a participant, and Mrs. Atkin is a beneficiary, under an ERISA welfare plan issued by Liberty, namely, Group Life Insurance Policy No. SA3-811-251842-01 (the "Plan"). This Complaint challenges Liberty's unlawful termination of the Waiver of Premium Benefit under the Plan and Liberty Mutual's termination of the Plan itself without appropriate justification. Mr. and Mrs. Atkin bring this action to recover benefits due to Mr. Atkin under the Plan, to enforce their rights under the terms of the Plan, and to clarify their rights to future benefits under the Plan. Specifically, Mr. and Mrs. Atkin bring this action to require Liberty to reinstate the Plan and to continue to apply the Waiver of Premium Benefit afforded by the Plan. Finally, Mr. and Mrs. Atkin bring this action to recover costs and attorneys' fees as provided by ERISA.

## PARTIES

2. The plaintiff, Michael J. Atkin, is an individual who resides at 56 Sean Louis Circle, West Springfield, Massachusetts. Mr. Atkin is a vested participant in a Liberty employee benefit plan, within the meaning of 29 U.S.C. §1002(7). Mr. Atkin has standing to bring this action pursuant to 29 U.S.C. §1132(a)(1).

3. The plaintiff, Judith M. Atkin, is an individual who also resides at 56 Sean Louis Circle, West Springfield, Massachusetts. Mrs. Atkin is the wife of Mr. Atkin and is a beneficiary under Mr. Atkin's Liberty employee benefit plan, within the meaning of 29 U.S.C. §1002(8). Mrs. Atkin has standing to bring this action pursuant to 29 U.S.C. §1132(a)(1).

4. The defendant, Liberty Life Assurance Company of Boston, is a Massachusetts corporation with a usual place of business at 175 Berkeley Street, Boston, Massachusetts.

## JURISDICTION

5. This Court has personal and subject matter jurisdiction in this case pursuant to 29 U.S.C. §1132(e) and (f).

## FACTS

**The Plan**

6. On or about January 1, 1997 Mr. Atkin was issued the Plan by Liberty, while employed by Winstar Communications, Inc.

7. The Plan does not grant Liberty discretionary authority to determine eligibility for benefits or to interpret the terms of the Plan.

8. The Plan contains a Waiver of Premium benefit which provides that:

> If a covered employee becomes totally disabled before age 65 and premium payments stop, his coverage will continue for 1 year from the date he stops active work for the Sponsor. If the covered employee dies within that year, the life insurance benefit will be paid provided proof of

2

continuous total disability until death is given to Liberty within 1 year after death.

If, within 1 year from the date the covered employee stops active work, Liberty receives proof that the covered employee's total disability has continued for 9 months (called initial proof), the life insurance benefit will continue without payment of premium while that disability lasts, provided that:

a) Liberty, during the 3 months before each anniversary of receipt of initial proof, receives proof of continuation of total disability; and

b) the covered employee submits to an examination by a physician as provided below.

## Mr. Atkin's Total Disability

9. Since approximately May 1, 1997, Mr. Atkin has been totally disabled from working due to multivessel coronary artery disease, exacerbated by severe insulin dependent diabetes.

10. Mr. Atkins' total disability resulted following a longstanding period of coronary disease. In particular, Mr. Atkin suffered a heart attack in 1985 and had quadruple coronary bypass surgery in April of 1989. In November of 1996, Mr. Atkin developed recurrent symptoms suspicious of angina. A cardiac catheterization performed in November of 1996 showed that Mr. Atkin's right coronary artery was occluded, that his sequential circumflex graft was severely diseased, that his heart muscle was weakened, and that his saphenous vein graft demonstrated several areas of severe stenosis. Mr. Atkin underwent balloon dilation, and two stents were placed in the saphenous vein graft. In March of 1997, after experiencing recurring chest pain, Mr. Atkin underwent another catheterization, which demonstrated that his graft now was totally occluded.

11. On March 26, 1997, Mr. Atkin met with his cardiologist, Reed Shnider, M.D. Dr. Shnider advised Mr. Atkin that Mr. Atkin was not a candidate for further surgery. Dr. Shnider

based his opinion on the results of Mr. Atkin's catheterization and on Mr. Atkin's other medical issues, including the fact that he suffered from severe insulin dependent diabetes affecting his arterial circulation.

12. Dr. Shnider advised Mr. Atkin that, in Dr. Shnider's opinion, Mr. Atkin was totally disabled. Dr. Shnider based this opinion on the fact that Mr. Atkin was experiencing anginal symptoms, including chest pain and shortness of breath, that even mild exertion or stress exacerbated these problems, and that Mr. Atkin's cardiac condition was a life-threatening condition. Dr. Shnider advised Mr. Atkin that stress of work would place Mr. Atkin at a significantly increased risk for a catastrophic cardiac event. Accordingly, Dr. Shnider advised Mr. Atkin that he should stop working as soon as possible.

13. As a result of Dr. Shnider's advise, Mr. Atkin's last date of active employment was May 1, 1997.

14. In November of 1997, the United States Social Security Administration approved Mr. Atkin's application for disability benefits based on Mr. Atkin's cardiac condition, and Mr. Atkin has continued to receive Social Security disability benefits since that time.

## Liberty's Application of the Waiver of Premium Benefit

15. In late February or early March of 1998, Liberty received initial proof that Mr. Atkin was totally disabled and that his total disability had continued for 9 months.

16. Included with the initial proof received by Liberty in late February or early March of 1998 was an Attending Physician's Statement of Disability completed by Dr. Shnider, wherein Dr. Shnider indicated that Mr. Atkin was totally disabled secondary to coronary disease and that the disabling condition was likely to be permanent.

17. By letter dated May 15, 1998, Liberty advised Mr. Atkin that:

> Based on medical information currently in our files, we have approved [your] claim for the Waiver of Premium benefit under your Group Life Insurance Policy. This means that while you are disabled, your coverage will remain in effect and we will not require payment of the premiums normally due.

18. By said letter dated May 15, 1998, Liberty further advised Mr. Atkin, under the heading "Conditions," that:

> This Waiver of Premium benefit shall remain in effect as long as the following conditions are met:
> - you continue to be disabled by your illness;
> - your disability prevents you from performing any occupation similar to that for which you are reasonably suited, taking into account your age, education, training and experience.

19. At all time relevant hereto, Mr. Atkin has cooperated with Liberty and complied with all conditions imposed by Liberty for continuation of the Waiver of Premium Benefit, including providing Liberty with ongoing proof of a continuing disability and agreeing to submit to any physical examinations if Liberty had requested such examinations.

20. In January and February of 2000, Liberty conducted a review regarding Mr. Atkin's Waiver of Premium Benefit. Said review included a record review by Liberty's physician, Dr. Conrad, who determined that Mr. Atkin should be restricted from any activity that gave him chest pain.

21. Following said review by Liberty in January and February of 2000, Liberty continued to provide the Waiver of Premium Benefit to Mr. Atkin based on Mr. Atkin's continuing total disability.

22. In September, 2002, Dr. Shnider forwarded an Attending Physician's Statement to Liberty indicating that Mr. Atkin's condition was unchanged, that he had a severe limitation of

functional capacity and was incapable of minimum activity, and that he was unable to engage in stressful situations or engage in interpersonal relations.

23. In July of 2003, Dr. Shnider forwarded another Attending Physician's Statement to Liberty regarding Mr. Atkin. On that form, Dr. Shnider checked a box indicating that Mr. Atkin had a Class 4 physical impairment and that he had a moderate limitation of functional capacity and was capable of clerical/administrative activity.

24. As Dr. Shnider later clarified to Liberty in a letter dated January 15, 2004, Dr. Shnider apparently checked the "Class 4 box" on the July, 2003 Attending Physician's Statement in error, and meant to check the "Class 5 box." Dr. Shnider's January 15, 2004 letter to Liberty indicated that he was correcting his previous statement and clarified that he continued to believe that Mr. Atkin had a severe limitation of functional capacity and was incapable of minimum activity.

25. In fact, in the Attending Physician Statement submitted to Liberty in July of 2003, Dr. Shnider also indicated that Mr. Atkin's progress was "Guarded" and that Mr. Atkin's expected return to work date was "Never."

26. In a Physical Capacity Form forwarded by Dr. Shnider to Liberty in November of 2003, Dr. Shnider indicated that the hours that Mr. Atkin was capable of working per workday was "None." Dr. Shnider further indicated that Mr. Atkin was "permanently disabled."

27. Since May 15, 1998, when Liberty initially determined that Mr. Atkin was totally disabled and entitled to the Waiver of Premium Benefit, Mr. Atkin's medical condition has remained substantially the same.

28. Since May 15, 1998, when Liberty initially determined that Mr. Atkin was totally disabled and entitled to the Waiver of Premium Benefit, Mr. Atkin has remained totally disabled from working.

## Liberty's Termination of the Waiver of Premium Benefit

29. By letter dated January 8, 2004, Liberty informed Mr. Atkin that his file, including reports from Mr. Atkin's physicians, had been referred to Liberty's Medical Disability Services Unit for review. The letter further informed Mr. Atkin that the results of that review indicated that:

> you have been stable with no signs of worsening or deterioration of this condition. You have not had any symptoms, free of chest pain and angina. Your total disability is not supported by the medical evidence in file. You demonstrate at least a sedentary level and based on medical evidence, you are able to perform sedentary capacity, full time.

30. Said letter dated January 8, 2004 further informed Mr. Atkin that:

> Based on this information, you do not meet the definition of total disability. Therefore, as of January 8, 2004, we must deny your claim for further benefit consideration.

31. By letter dated January 15, 2004, Mr. Atkin timely notified Liberty that he was requesting a review of Liberty's decision to terminate his Waiver of Premium Benefit.

32. Also on January 15, 2004, Dr. Shnider submitted a letter to Liberty in connection with Mr. Atkin's request for review. Dr. Shnider's letter stated:

> I received a communication regarding Michael Atkin's disability status, which in turn quoted my physician statement of July 25, 2003. Please allow me to clarify any confusion that may have been generated by this form. Michael has severe multivessel coronary artery disease, severe peripheral vascular disease, severe left ventricular systolic dysfunction, multiple closed bypasses, multiple occluded arteries, and has suffered several myocardial infarctions. He remains significantly impaired as a result of his condition, which also now includes sleep apnea, according to recent testing. My intention was not to create the impression that Michael is not completely and permanently disabled, and I see how confusion could have been generated by the way that I filled out the form. I would like to

take this opportunity to clarify that his degree of physical impairment is Class 5 rather than Class 4 correcting my previous statement, suggesting that he has severe limitation of functional capacity and is incapable of minimal activity. The activities, which he is able to perform are performed with great difficulty and only in the setting of activities of daily living and very light, supervised exercise. This status is permanent in the setting of his medical conditions as outlined above.

I hope that this communication is adequate to clarify any confusion that may have occurred as a result of the previous form. Please feel free to contact me if further clarification is necessary.

33. At no time did Liberty contact Dr. Shnider to obtain further clarification or to obtain additional information.

34. At no time did Liberty exercise its right to have a physician examine Mr. Atkin.

35. By letter dated February 13, 2004, Liberty advised Mr. Atkin that it was "unable to alter [its] original determination to deny benefits." The letter indicated that Liberty had determined that "it appears you are capable of low stress part time sedentary work."

36. Liberty terminated the Waiver of Premium Benefit, with the result that the Plan has lapsed and Mr. Atkin is no longer insured by, and Mrs. Atkin is no longer a beneficiary of, the Liberty life insurance Plan.

37. Liberty terminated the Waiver of Premium Benefit even though Liberty itself acknowledged, in its letter dated February 13, 2004 that "it does not appear that [Mr. Atkin's] condition has changed since Dr. Conrad's review of 2000."

38. Liberty terminated the Waiver of Premium Benefit in complete disregard of the opinion of Mr. Atkin's attending cardiologist that, among other things, the stress of work would place Mr. Atkin at a significantly increased risk for a catastrophic cardiac event.

39. Liberty terminated the Waiver of Premium Benefit without undertaking any medical examination of Mr. Atkin and without obtaining any other medical information regarding Mr. Atkin.

40. Liberty terminated the Waiver of Premium Benefit even though it failed to establish that Mr. Atkin is not totally disabled.

41. Liberty terminated the Waiver of Premium Benefit even though its determination that Mr. Atkin is "capable of low stress part time sedentary work," even if true, would be insufficient under applicable law to support a finding that Mr. Atkin is not totally disabled.

42. Liberty had a substantial financial interest in terminating the Waiver of Premium Benefit, and its conduct in this case should be reviewed in light of its obvious conflict of interest in this matter.

43. Due to Liberty's unlawful denial of benefits under ERISA, Mr. and Mrs. Atkin have suffered and will suffer harm.

44. Mr. and Mrs. Atkin have exhausted all applicable administrative procedures before bringing this action.

## COUNT I
### (Enforcement of Plan)

45. Mr. and Mrs. Atkin repeat and incorporate by reference the allegations contained in paragraphs 1 through 44, above.

46. Liberty's actions constitute an unlawful and improper denial of benefits, and Mr. and Mrs. Atkin are entitled to recover said benefits, to enforce their rights under the Plan, and to clarify their rights to future benefits under the Plan pursuant to ERISA, 29 U.S.C. §1132(a)(1)(B).

## COUNT II
### (Equitable Estoppel)

47. Mr. and Mrs. Atkin repeat and incorporate by reference the allegations contained in paragraphs 1 through 46, above.

48. In Liberty's letter dated May 15, 1998, advising Mr. Atkin that his claim for the Waiver of Premium Benefit had been approved, Liberty represented to Mr. Atkin that the Waiver of Premium Benefit "shall remain in effect as long as ... you continue to be disabled by your illness [and] your disability prevents you from performing any occupation similar to that for which you are reasonably suited, taking into account your age, education, training and experience."

49. Mr. Atkin reasonably and justifiably relied to his detriment on said representation by Liberty.

50. Following a review of Mr. Atkin's Waiver of Premium Benefit in 2000, Liberty continued to determine that Mr. Atkin was totally disabled for purposes of the Waiver of Premium Benefit.

51. Liberty itself has acknowledged that Mr. Atkin's condition has not changed since Liberty's review in 2000.

52. Mr. Atkin's disability continues to prevent him from performing any occupation similar to that for which he is reasonably suited, taking into account his age, education, training and experience.

53. Liberty is estopped from terminating Mr. Atkin's Waiver of Premium Benefit based on Liberty's application of a new and different standard, i.e. that Mr. Atkin "appears ... capable of low stress part time sedentary work."

54. Liberty's termination of the Waiver of Premium Benefits, and its subsequent termination of the Plan itself, therefore is unlawful and improper.

## COUNT III
### (Recovery of Attorneys' Fees and Costs)

55. Mr. and Mrs. Atkin repeat and incorporate by reference the allegations contained in paragraphs 1 through 54, above.

56. Mr. and Mrs. Atkin deserve to recover a reasonable attorneys' fee and the costs of this action, pursuant to ERISA, 29 U.S.C. §1132(g)(1).

57. Liberty has the ability to satisfy such an award.

58. Mr. and Mrs. Atkin's conduct in this action is in the interests of all participants suffering from disabling physical conditions who subscribe to the Plan, and the relief granted herein will benefit all such participants.

59. The award of attorneys' fees against Liberty will deter others acting under similar circumstances from unlawful conduct.

**WHEREFORE**, the plaintiffs, Michael J. Atkin and Judith M. Atkin, respectfully request that this Court

a. Declare, adjudge and decree that Liberty's termination of the Waiver of Premium Benefit under the Plan, and its subsequent termination of the Plan itself, was unlawful and improper;

b. Declare, adjudge and decree that Liberty is obligated to reinstate the Plan in full and to reinstate the Waiver of Premium Benefit;

c. Award Mr. and Mrs. Atkin the costs of this action and reasonable attorneys' fees; and

      d.    Award such other relief as this Court may deem just and proper.

THE PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL CLAIMS SO TRIABLE.

                                    The Plaintiffs
                                    MICHAEL J. ATKIN
                                    JUDITH M. ATKIN
                                    By Their Attorney

Dated: June 2, 2004

                                    George W. Marion, BBO No. 320450
                                    Bulkley, Richardson and Gelinas, LLP
                                    1500 Main Street, Suite 2700, Box 15507
                                    Springfield, MA  01115-5507
                                    Tel. (413) 781-2820
                                    Fax (413) 272-6802